UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO TRUJILLO MIJARES (A-074-040-709),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, MESA VERDE DETENTION FACILITY),<br><br>Respondent. | No. 1:26-cv-05948 DC CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Lorenzo Trujillo Mijares (A-074-040-709), a native and citizen of Cuba who is now proceeding with appointed counsel, filed a verified pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] On March 31, 1995, petitioner entered the United States on humanitarian parole for Cuban nationals and subsequently adjusted status to lawful permanent resident. On January 14, 2013, an immigration judge ordered him removed. Petitioner was subsequently detained by U.S. Immigration and Customs Enforcement ("ICE") officials on July 24, 2013, and released after ninety days under an Order of Supervision on October 21, 2013. (ECF No. 1 at 6; ECF No. 5-9 at 2.) On December 5, 2025, ICE officials re-detained petitioner. (ECF No. 5 at 1.) This habeas action concerns petitioner's re-detention. For the reasons that

[1] Petitioner is proceeding in forma pauperis. This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

follow, the Court recommends that the petition for writ of habeas corpus be granted.

## I. FACTUAL BACKGROUND

Petitioner, while still a minor, entered the United States on March 31, 1995 on humanitarian parole for Cuban nationals. (See ECF No. 1 at 5; ECF No. 5-1 at 2.) On May 2, 1997, petitioner adjusted status to lawful permanent resident. (Id.) On January 14, 2013, an immigration judge ordered him removed to Cuba. (ECF No. 5-10.) Petitioner waived appeal. (Id.) In July 2013, ICE detained petitioner following his order of removal but subsequently released him on an Order of Supervision on October 21, 2013. (ECF No. 1 at 6; ECF No. 5-6; ECF No. 5-9 at 2.) ICE re-detained petitioner on December 5, 2025.[2] (ECF No. 5 at 1.) On May 2, 2026, immigration officials issued petitioner with a notice of removal to Mexico ostensibly because petitioner is not on Cuba's repatriation list.[3] (ECF No. 5-5 at 1)

Petitioner has a lengthy criminal history and has been arrested and convicted by local authorities on multiple occasions for different charges. (See ECF No. 5-8.) Most recently, petitioner was arrested on December 2, 2025 and charged with trespassing in violation of Fla. Stat. § 810.09.1a1, which remains pending. (ECF No. 5-8 at 29.)

## II. PROCEDURAL BACKGROUND

On July 29, 2026, petitioner filed this petition for writ of habeas corpus. (ECF No. 1.) On August 10, 2026, respondent timely filed an answer to the petition. (ECF No. 5.) On September

---

[2] Petitioner indicated that he was detained by ICE on January 28, 2026. (ECF No. 1 at 6). However, respondent asserts the detention date as "on or around December 5, 2025." (ECF No. 5 at 1). Respondent submitted a notice of revocation of release dated December 5, 2025 with a proof of service on petitioner dated January 28, 2026. (ECF No. 5-6). Respondent also submitted a declaration from an ICE deportation officer, who states that petitioner was taken into custody after a December 2, 2025 arrest, and confirms the dates of the notice of revocation of release as December 5, 2025 and service as January 28, 2026. (ECF No. 5-9 at 3). Because the Court need not resolve this factual inconsistency in its determination of the merits of petitioner's claims, the Court declines to do so but will rely on respondent's asserted date of detention as December 5, 2025.

[3] The certificate of service indicates that petitioner refused to sign but no date of attempted service is listed. (Id.) Respondent also submitted a declaration from an ICE deportation officer indicating that on March 20, 2026, ICE served petitioner a notice of intent to remove him to Mexico. (ECF No. 5-9 at 3.) Respondent did not submit a copy of this document. (See ECF No. 5.)

22, 2026, the Court appointed counsel. (ECF No. 7.) On October 8, 2026, with appointed counsel, petitioner filed a reply. (ECF No. 9.) On October 15, 2026, respondent filed a response. (ECF No. 10.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner challenges his continued detention because it is prolonged and violates the Fifth Amendment due process clause. (ECF No. 1 at 16-17.) Respondent argues that petitioner is subject to detention under 8 U.S.C. § 1231(a)(6) because he is subject to an administratively final order of removal. (ECF No. 5 at 1-2.) Respondent further argues petitioner's detention is lawful and not prolonged because he can be readily removed to Mexico. (Id.)

### A. Detention Authority & Due Process Claim

The parties agree that petitioner is subject to an administratively final order of removal. (ECF No. 1 at 6; ECF No. 5 at 1; ECF No. 8 at 2-3.) Accordingly, petitioner's detention is governed by 8 U.S.C. § 1231(a)(6).

Petitioner argues that his continued detention is prolonged and violates his right to due process. (ECF No. 1 at 16-17) Because his claim requires examination of the relevant government statutory and regulatory authority for detaining individuals subject to a final removal

order and the procedures for revoking release, procedures that protect important due process rights, the Court discusses these first. See Vu v. Noem, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025); Nguyen v. Hyde, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear the 90-day removal period has long passed where petitioner was ordered removed to Cuba on January 14, 2013, and the record indicates he waived appeal. (See ECF No. 5-10.) It is also undisputed that petitioner was most recently released under an Order of Supervision on or about October 21, 2013. (ECF No. 5-6 at 1; ECF No. 5-9 at 2.)

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). On December 5, 2025, an ICE supervisor signed a notice of revocation of release, which was served on petitioner on January 28, 2026. (ECF No. 5-6.)

Citing Zadvydas, respondent argues that petitioner's detention is not prolonged where the Supreme Court has found that six months is a presumptively reasonable amount of time to effect

removal. (ECF No. 5 at 3) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

In the instant case, it is clear that petitioner was previously detained, released on an Order of Supervision in October 2013, and has been re-detained well beyond the expiration of the 90-day removal period. Therefore, respondent has the burden of demonstrating that there is a significant likelihood that petitioner may be removed pursuant to 8 C.F.R. § 241.13(i)(2) in order to justify his detention.

Here, the immigration judge ordered petitioner removed to Cuba. (ECF No. 5-10 at 2.) Respondent makes no attempt to demonstrate that petitioner's removal to Cuba is likely in the reasonably foreseeable future. (See ECF No. 5.) Additionally, ICE concedes that it previously released petitioner from detention in 2013 because it determined that "removal to Cuba in the foreseeable future was unlikely." (ECF No. 5-9 at 2.) ICE asserts that petitioner is subject to removal to the third country of Mexico and that ICE "can complete removal to Mexico within approximately seven days" if he were to cooperate in the removal process. (Id. at 3.) While ICE indicates generally that it has "operational pathways to remove certain aliens to Mexico,"

respondent has not identified any specific steps taken with the Mexican government to arrange for this petitioner's removal to that country in over ten months since his re-detention and in over five months since immigration officials informed him of their intention to remove him to Mexico. (See ECF No. 5-9 at 3.) Additionally, petitioner asserts that his potential removal to Mexico "is premised on the consent of the noncitizen subject to such removal; consequently, removal to Mexico is therefore unlikely if the noncitizen declines to cooperate with that removal." (ECF No. 8 at 8 (citing Orestes Juan Arias Garcia v. Warden, Cent. Valley Annex, No. 1:26-cv-04659-DJC-JDP, 2026 WL 2254380, at *3 (E.D. Cal. Aug. 4, 2026); Arenado Borges v. Bondi, No. 2:25-cv-02193-JNW, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025).) Respondent has not responded to this allegation, and its failure to respond is interpreted as a concession. (See ECF No. 9.) Accordingly, the Court finds the government has not met its burden of demonstrating that there is a significant likelihood of petitioner's removal to Mexico in the reasonably foreseeable future. See Arenado-Borges v. Bondi, 2025 WL 3687518 at *4 ("[S]tanding alone, the fact that removals to a particular country 'are in fact occurring,' says nothing about whether Mexico will accept [petitioner] any time soon.").

Further, respondent does not directly argue that petitioner has not cooperated with ICE. (See ECF No. 5.) Though respondent submitted an ICE deportation officer's declaration that states petitioner has failed to comply, respondent has not presented sufficient evidence of petitioner's alleged noncooperation with ICE's efforts to remove him to Mexico. (See ECF Nos. 5, 5-9 at 3.) Although the evidence submitted by respondent indicates that petitioner declined signing several immigration forms, respondent presents no evidence that petitioner has failed to cooperate in identity verification, travel-document processing, or other required steps. (See ECF Nos. 5-3, 5-5.) The ICE deportation officer's declaration states that petitioner has refused to accept removal to Mexico. (ECF No. 5-1 at 3) However, petitioner's refusal to consent to his removal to a third country does not amount to affirmative misrepresentation or refusal to apply for travel documents that would defeat petitioner's Zadvydas claim. See, e.g., Pelich v. I.N.S., 329 F.3d 1057, 1059 (9th Cir. 2003) (petitioner refused to fill out a passport application and provided conflicting biographical information); Lema v. I.N.S., 341 F.3d 853, 856-57 (9th Cir.

2003) (petitioner refused to cooperate honestly with officials to secure travel documents from a foreign government).

Petitioner was re-detained on December 5, 2025, and has been detained for over ten months without removal. Based on the current record, the Court concludes that petitioner's removal is not reasonably foreseeable, his detention is unreasonably prolonged, and the petition should be granted. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (remedy is release upon a finding that removal was not reasonably foreseeable).

### D. Remedy

Based on the recommendation that the petition be granted, this Court recommends that petitioner be immediately released to return him to the status quo before the pending controversy. See Yang v. Kaiser, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante litem is "the last uncontested status which preceded the pending controversy"). Because petitioner challenges his current re-detention, the last uncontested status of petitioner was his release under the October 21, 2013 Order of Supervision before his re-detention on December 5, 2025.

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Respondent be ordered to IMMEDIATELY release petitioner Lorenzo Trujillo Mijares (A-074-040-709) under the same conditions he was previously released in his October 21, 2013 Order of Supervision and be ordered to provide petitioner with a copy of the release order at or near the time of release. If respondent has custody of petitioner's personal possessions and documents (e.g., identification, passport, work permit, Social Security card, etc.), respondent shall return those to petitioner at the time of release.
3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements of 8 C.F.R. § 241.13(i) for revocation of release, and any other

applicable statutory and regulatory procedures.

4. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 22, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/truj5948.imm.1231prolonged.release/10